IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PURAPHARM INTERNATIONAL (H.K.) LIMITED, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-14-3181 |
| PUREPHARMA, INC. and PUREPHARMA APS, | § § § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendants' Motion to Transfer Venue (Document No. 12).  After carefully considering the motion, response, reply, and applicable law, the Court concludes as follows.

I. Background

Plaintiff PuraPharm International (H.K.) Limited ("Plaintiff") is a Hong Kong limited liability company that produces health, nutritional and pharmaceutical products, which it sells under the federally registered trademark "PURAPHARM."[1]  Plaintiff alleges that since 2001 it has continuously used the PURAPHARM mark in commerce in the United States, including in Texas, in connection with the sale of food supplements, dietary and nutritional

_____

[1] Document No. 7 (1st Am. Compl.).

supplements, pharmaceutical products, and Chinese medicines.[2] Defendant PurePharma APS is a Danish limited liability company which allegedly began marketing and distributing dietary and nutritional supplements, food supplements, and pharmaceutical products under the mark PUREPHARMA in 2009.[3] Defendant PurePharma, Inc. (together with PurePharma APS, "Defendants"), a corporation incorporated in Delaware and headquartered in Mill Valley, California, is a wholly-owned subsidiary of PurePharma APS, which "is in charge of the advertising, sale, production, and distribution of products in the United States under the PUREPHARMA mark."[4]

On October 30, 2012, PurePharma APS filed an application to federally register the mark PUREPHARMA, which Plaintiff opposed.[5] Plaintiff then filed this suit, alleging federal trademark infringement and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a).[6] Defendants move to transfer venue to the San Francisco Division of the Northern District of California, pursuant to 28 U.S.C. § 1404(a).[7]

---

[2] Id. ¶ 9.

[3] Id. ¶¶ 15, 17.

[4] Document No. 12 at 2-3.

[5] Document No. 7 ¶¶ 18, 21.

[6] Id. ¶¶ 34-42.

[7] Document No. 12.

2

II. <u>Legal Standard</u>

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  The purpose of section 1404(a) is "to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid wasted time, energy, and money." <u>Spiegelberg v. Collegiate Licensing Co.</u>, 402 F. Supp. 2d 786, 789 (S.D. Tex. 2005) (citing <u>Van Dusen v. Barrack</u>, 84 S. Ct. 805, 809 (1964)).  The transfer of an action under section 1404 is committed to the sound discretion of the district court.  <u>Jarvis Christian Coll. v. Exxon Corp.</u>, 845 F.2d 523, 528 (5th Cir. 1988).

Under section 1404(a), the movant bears the burden of showing "good cause" to transfer venue.  <u>In re Volkswagen of Am., Inc.</u> ("<u>Volkswagen II</u>"), 545 F.3d 304, 315 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 1336 (2009).[8]  "This 'good cause' burden reflects the

_____

[8] Plaintiff refers to Defendants' burden as "heavy" and "significant," Document No. 18 at 2, but mistakenly relies on a standard in <u>Volkswagen II</u> which the Fifth Circuit was distinguishing.  *See* 545 F.3d at 314 ("[T]he burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal.  And we have recognized as much, noting that the 'heavy *burden* traditionally imposed upon defendants by the *forum non conveniens* doctrine--dismissal permitted only in favor of a substantially more convenient alternative--was dropped in the § 1404(a) context.  In order to obtain a new federal [venue], the statute requires only that the transfer be '[f]or the convenience

appropriate deference to which the plaintiff's choice of venue is entitled." <u>Id.</u> "When the movant demonstrates that the transferee venue is clearly more convenient . . . it has shown good cause and the district court should therefore grant the transfer." <u>Id.</u> However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." <u>Id.</u> A court should not transfer a case "if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." <u>Goodman Co., L.P. v. A & H Supply, Inc.</u>, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005) (quotation marks and citation omitted). "[W]here, as is the case here, the plaintiff is not from the forum it has chosen, the plaintiff's choice is given less deference." <u>Molina v. Vilsack</u>, No. CIV. A. V-09-40, 2009 WL 5214098, at *2 (S.D. Tex. Dec. 23, 2009).

The threshold issue under section 1404(a) is whether the plaintiff's claim could have been filed in the judicial district to which transfer is sought. <u>In re Volkswagen AG</u> ("<u>Volkswagen I</u>"), 371 F.3d 201, 203 (5th Cir. 2004). If so, the court then considers a number of private interest and public interest factors to determine whether transfer is for the convenience of the parties and in the interest of justice. <u>Volkswagen II</u>, 545 F.3d at 315. The private interest factors are: (1) the relative ease of access

---

of the parties, in the interest of justice.'''") (quoting <u>Veba-Chemie A.G. v. M/V Getafix</u>, 711 F.2d 1243, 1247 (5th Cir. 1983)).

to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.  Id.  The public interest factors are:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.  Id.  Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." Id.

## III. Analysis

It is undisputed that Plaintiff could have filed suit in the Northern District of California, where PurePharma, Inc. is headquartered and where Defendants make all of their United States production, marketing, and sales decisions.  Defendants argue that the relevant key witnesses and documents are all located in California, and that there is no reason to try this case in Houston, where neither Plaintiff nor its distributors are located[9]

---

[9] Plaintiff alleges that it distributes its products in the United States through partnerships with Uncle Bill USA Trading, Inc. and Tronex Herbal Solutions, which are located in New York and New Jersey, respectively. See Document No. 7 ¶ 10; Document No. 13 at 11 of 75 to 15 of 75.

and where none of Defendants' decisions relating to trademark useage are made.[10]   Plaintiff argues that "many of the operative events giving rise to this lawsuit occurred in this District,"[11] and identifies five Houston businesses that sell Defendants' products, but provides no explanation for why sales by Houston businesses differ in any respect from sales by businesses elsewhere, including California, which is Defendants' largest market.   After all, it is undisputed that both Defendants and Plaintiff sell their products globally and nationwide.

A.   Private Factors

Defendants produce evidence that "[t]he majority of Defendants' United States corporate employees, including those primarily responsible for the production, advertising, and sale of PUREPHARMA branded products in the United States, are located in [their] headquarters office in Mill Valley, California," and that "the majority of the documents relevant to [advertising, production, and sale of products under the PUREPHARMA mark] are located in Mill Valley."[12]   See Spiegelberg, 402 F. Supp. 2d at 791-92 ("Courts have observed that '[i]ntellectual property infringement suits often focus on the activities of the alleged

_____

[10]  Document No. 12.

[11]  Document No. 18 at 7.

[12]  Document No. 13 at 5 of 75 to 6 of 75.

infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration' in adjudicating transfer of venue motions.") (quoting <u>Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.</u>, 85 F.Supp.2d 663, 668 (S.D. Tex. 1999)).

Without naming even one individual as a witness and outlining that witness's probable testimony and importance to Plaintiff's case, Plaintiff identifies five Houston businesses by their business names, which have sold Defendants' products, and characterizes those businesses as "material, non-party witnesses," from which Plaintiff asserts that it "intends to seek documents . . . including documents showing sales of PurePharma."[13]  Of course, to obtain document production, the case need not be in this venue.  Moreover, Defendants freely admit that they offer products bearing the PurePharma mark "around the world and throughout the United States, including in Texas,"[14] and Plaintiff does not identify any documentary or other evidence in Texas related to infringement that would not be equally available in California or anywhere else in the nation where Defendants sell their products.[15]

---

[13] Document No. 19 at 7 of 58 to 8 of 58.

[14] Document No. 13 at 4 of 75.

[15] Plaintiff points to a single instance in which Paper Street Crossfit in Houston mistakenly identified Defendants' brand as "PuraPharma" instead of "PurePharma," in an online advertisement. *See* Document No. 24 at 4 of 8.  However, this substitution of an "a" for the "e" in "PureForma" may be merely a typo and not--as

7

Furthermore, Defendants present uncontroverted evidence that "PurePharma does not do any marketing or sales promotions in the Southern District of Texas differently than in all other areas of the U.S. where [Defendants] market [their] products" and that California is "by far [Defendants'] biggest and most important market."[16] Accordingly, the relative ease of access to proof favors transfer to California.

Defendants identify three key employees--Lars Jensen (President North America of PurePharma, Inc.), Oliver Amdrup (Chief Executive Officer of both Defendants), and Holly Willis (Digital Marketing Manager for PurePharma, Inc.)--who have knowledge regarding the use of Defendants' mark in commerce, and their advertising, sales, profits, and customers in the United States.[17] Although Plaintiff identifies a single employee of Defendants, Lore Layton, who works as a sales manager in Houston and whom Plaintiff intends to call as a witness, Defendants produce uncontroverted evidence that Layton "is not involved in the design and creation of PurePharma's advertising and promotional materials displaying the PUREPHARMA mark," and that all such materials used in the United

---

Plaintiff represents--an instance of actual confusion with Plaintiff's mark, which is "PuraPharm," with no "a" at the end of that mark. Furthermore, the similarity of the parties' marks and the resulting alleged likelihood of confusion is unrelated to their particular use in Texas.

[16] Document No. 23 at 4 of 21 to 5 of 21.

[17] Document No. 12 at 6.

States are developed in the California headquarters.[18]  As noted above, Plaintiff identifies five Houston businesses as potential "witnesses," but--except arguably for one website advertisement mentioned above substituting an "a" for the "e" in "PurePharma,"--makes no representation of any information relating to Defendants' alleged infringement that is uniquely available to those businesses.

Although the transfer analysis is more concerned with convenience to party witnesses than to non-party witnesses, "a court must concentrate primarily upon the availability and convenience of key witnesses." Remmers v. United States, No. CIV. A. 1:09-CV-345, 2009 WL 3617597, at *5 (E.D. Tex. Oct. 28, 2009) (collecting cases).  "In determining whether a particular venue is more convenient to witnesses, the court should inquire into the nature and quality of the witnesses' potential testimony with regard to the issues in dispute rather than limit its investigation to a review of which party can produce the longer witness list." Id.; see also Houston Trial Reports, Inc. v. LRP Publications, Inc., 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999) ("The convenience of one key witness may outweigh the convenience of numerous less important witnesses.") (citation omitted).  The only individuals who have been identified as key witnesses all reside in the Northern District of California.  Moreover, Plaintiff has not

---

[18] Document No. 23 at 4 of 21.

identified any relevant information or anticipated testimony
expected from any Texas witness that could not also be elicited
from similar witnesses who reside in California.   Furthermore,
Plaintiff's headquarters are in Hong Kong, and PurePharma APS is
headquartered in Denmark, and Defendants produce evidence that
nonstop flights are available to San Francisco but not to Houston
from both Hong Kong and Copenhagen.[19]   Accordingly, on balance the
private factors relating to witnesses and other practical problems
weigh decidedly in favor of transfer.[20]

B.   <u>Public Factors</u>

Because this case involves federal trademark law, the public
factors involving the court's familiarity with the governing law
and the avoidance of unnecessary conflicts are neutral.   As for the
court congestion factor, judges in the Northern District of
California had an average of 502 cases filed in 2014, compared to
767 cases in the Southern District of Texas, but the Northern
District of California had a higher percentage of civil cases and
a longer median time from filing to trial, so on balance this

---

[19] Document No. 13 at 8 of 75 to 9 of 75

[20] Plaintiff argues that the availability of compulsory process
is a neutral factor, and the Court agrees.   Defendants have not
identified any key witnesses not within the employ of Defendants.

factor is neutral.[21]   Finally, the local interest in having localized interests decided at home favors transfer.  Defendants' business in the United States is headquartered in California, and all of Defendants' decisions relevant to this lawsuit emanate from there.  Plaintiff argues that Texas has a strong local interest in the case because "Defendants have marketed and sold their products in multiple locations in Texas" and have a territorial sales manager in Houston.[22]  However, as Plaintiff acknowledges, "[t]his case arises out of Defendants' adoption and use of an infringing trademark in the Southern District of Texas *and throughout the United States*."[23]  Texas has not been shown to have any greater localized interest in this trademark dispute than any other state where Defendants sell their products and, in fact, the uncontroverted evidence is that California, *not* Texas, is Defendants' biggest market.

C.   Conclusion

     After careful consideration of the private and public interest factors, the Court finds that Defendants have established that for the convenience of the parties and witnesses, in the interest of

---

[21] Document No. 13 at 49 of 75 to 50 of 75.

[22] Document No. 18 at 15.

[23] Id. at 14 (emphasis added).

11

justice this cause should be transferred to the Northern District of California.

## IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendants' Motion to Transfer Venue (Document No. 12) is GRANTED and this case is TRANSFERRED to the United States District Court for the Northern District of California, San Francisco Division.

The Clerk will mail a copy of this Order of Transfer to the Clerk of the United States District Court for the Northern District of California, San Francisco Division, and shall notify all parties and provide them with a true copy of this Order.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 20th day of April, 2015.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE